OPINION
Appellant Spring Industries, Inc. appeals a summary judgment of the Tuscarawas County Common Pleas Court, dismissing its complaint against appellees J.E. Nicolozakes and J.E. Nicolozakes Company for misappropriation of trade secrets, and a judgment dismissing its claim for breach of duty of good faith and fair dealing on the pleadings:
ASSIGNMENTS OF ERROR
 I. THE TRIAL COURT ERRED IN ENTERING SUMMARY JUDGMENT ON SPRING'S COUNT ONE, TRADE SECRET CLAIM, WHERE THE AFFIDAVITS AND DEPOSITION TESTIMONY CREATED GENUINE ISSUES OF MATERIAL FACT AS TO WHETHER THE INFORMATION PROVIDED BY SPRING'S TO NICOLOZAKES IS A "TRADE SECRET" AS DEFINED IN R.C. 1333.61 (D).
 II. THE TRIAL COURT ERRED IN DISREGARDING THE OHIO SUPREME COURT'S HOLDING IN FRED SIEGEL CO. V. ARTER 
HADDEN (1999) THAT:
 A) THE QUESTION WHETHER A PARTICULAR KNOWLEDGE OR PROCESS IS A TRADE SECRET IS A QUESTION TO BE DETERMINED BY THE TRIER OF FACT UPON THE GREATER WEIGHT OF THE EVIDENCE; AND
 (B) BECAUSE A KNOWLEDGE OR PROCESS CAN BE INDEPENDENTLY REPLICATED DOES NOT MEAN THAT IT IS EXCEPTED FROM OHIO'S TRADE SECRET LAW.
 III. THE TRIAL COURT ERRED IN DISMISSING SPRING'S COUNT TWO, BREACH OF COVENANT OF GOOD FAITH AND DEALING CLAIM, WHERE THE TRANSACTION INVOLVED THE SALE OF GOODS PURSUANT TO THE OHIO UCC, R.C. 1301 AND 1302.
Appellant was wholly owned and operated by Glenn Straub during all times relevant to the instant action. Formerly, appellant had operated a sand and gravel plant at Midvale, and engaged in the extraction and sale of sand and gravel deposits. In 1980, Straub had purchased appellant's plant from Edgar Spring. At that time, he assumed tenancy pursuant to a lease from the Spring Trust for the right to mine sand and gravel reserves on a large tract of property contiguous to the Spring Industries plant. Pursuant to this lease, appellant mined sand and gravel from the land owned by the trust until the lease expired in 1993. Appellant continued to mine the reserves on the Trust property after expiration of the written lease until 1996, when appellant discontinued all mining operations. The Trust filed an action against appellant in 1996 for forcible entry and detainer. In 1997, appellee became interested in acquiring a sand and gravel operation. He was in the process of restoring a concrete block manufacturing plant, and needed a source of sand and gravel for use in this operation. In early 1997, appellee was advised that appellant's mining operation was available for purchase. Appellee contacted Straub's attorney, Bob Samol, in April of 1997, to inquire about the plant. At the time, appellee mistakenly believed that appellant owned both the mining equipment and the reserves, which were located on the Trust property. Appellee negotiated with Straub and his agents for potential purchase of the mining plant. During negotiations, appellee became aware that the land containing the mining reserves was actually owned by the Spring Trust. In September of 1997, Straub broke off negotiations with appellee. Appellee proceeded to negotiate directly with representatives of the Trust for potential lease of the property where the mining reserves were located. Eventually, appellee reached an agreement with the Trust for lease of the property and aggregate reserves. Following termination of negotiations with appellee, Straub began negotiating with Jeff Sidwell, owner of Sidwell Materials, Inc.; Sidco Development, Inc.; and Belmont Leasing, Inc., for potential sale of Spring Industries. Appellant negotiated with Sidwell for several months. In January of 1998, counsel for appellant sent a letter to Sidwell, terminating the negotiations. From November of 1997, to early January of 1998, appellee met twice with Sidwell. Two weeks later, appellant filed the instant case. Thereafter, Sidwell constructed a sand and gravel plant on the land owned by the trust, which is leased to appellee. In count one of its complaint, appellant argued that Straub revealed confidential information concerning the mining operation to appellee during negotiations, which appellee then misappropriated, and used in engaging in a joint mining venture with Sidwell. In its second count, appellant claimed that appellee breached a duty of good faith and fair dealing. In its third count, appellant claimed that appellee interfered with negotiations between appellant and Sidwell, and ultimately engaged in a joint venture with Sidwell to mine the Trust minerals. The Tuscarawas County Common Pleas Court dismissed the claim for breach of duty pursuant to Civ.R. 12 (B)(6), for failure to state a claim upon which relief could be granted. The court granted summary judgment on the claim for misappropriation of trade secrets. These two judgments are the subject to the instant appeal. The claim for interference with business relationships proceeded to jury trial. The jury awarded appellant $44,000 in damages. This judgment is the subject of a separate appeal (00-01) by appellee.
 I and II
We address the first two assignments of error together, as both allege the court erred in granting summary judgment on the claim for misappropriation of trade secrets. Appellant argues that it presented evidence that representatives of appellant told appellee the information provided concerning the mining operations was confidential, and this evidence is sufficient to create a disputed fact. Appellant further argues that the court misinterpreted the law, as whether a particular knowledge or process is a trade secret is a question to be determined by the trier of fact, and a knowledge or process may still be a trade secret even if it can be independently replicated. R.C. 1333.61 (D) defines trade secret: (D) "Trade secret" means information, including the whole or any portion or phase of any scientific or technical information, design, process, procedure, formula, pattern, compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following: (1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. (2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.
Based on the statute, the mere fact that a knowledge or process is confidential is insufficient to render it a trade secret. In order to be a trade secret, the item must derive independent economic value from not being generally known, and not readily ascertainable by other persons. Appellants' reliance on Siegel v. Arter Hadden (1999), 85 Ohio St.3d 171, is misplaced, as that case involved interpretation of a former statutory definition of "trade secret," applicable in 1992. Under the 1992 version of the statute, an item of the type listed in the statute was a trade secret if it had not been published or disseminated, or otherwise become a matter of general public knowledge. R.C. 1333.51 (A)(3). The statute at that time provided that an item listed in the statute was presumed to be a secret when the owner took measures designed to prevent it, in the ordinary course of business, from being available to persons other than those selected by the owner to have access to the information for limited purposes. Id. The current version of the statute does not include this presumption of secretness. Further, the current statute sets a stricter standard for defining trade secrets, requiring that the information derive independent economic value from the fact that it is not generally known or readily ascertainable by proper means by persons who could obtain economic value from use of the information. The trial court did not err in entering summary judgment on the claim for misappropriation of trade secrets, on the basis that all information, for which appellant claimed trade secret status, was readily ascertainable. Pursuant to Civ.R. 56 (C), summary judgment is appropriate where there is no dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. We review summary judgment on the same standard and evidence as the trial court. Smiddy v. The Wedding Party, Inc. (1987),30 Ohio St.3d 35. Appellant argues that it provided confidential information to appellee concerning its past mining operation on the land owned by the trust, including the production history and location of sand and gravel reserves. Appellant owned a permit for mining operations at the site in question. Pursuant to reporting requirements for permit holders, appellant was required to report to the Division of Mines and Reclamation the annual total line production, the progression of mining operations conducted on the site, and maps showing in detail the areas which have and have not been mined. This map further contains a cross-section revealing the depths of the proposed mining operations. Appellee presented evidence that these records were, at all times relevant, public records, available for inspection. Further, appellee testified at his deposition that following his first meeting with appellant, he went to the Ohio Department of Natural Resources office in New Philadelphia to review the records kept in connection with appellants' mining operation. Information regarding the depth of deposits in a particular area can be obtained through inspection of well logs which are required to be filed with the Ohio Division of Geological Survey. Appellee presented evidence that the information which appellant now claims is a trade secret was provided to appellee by the Trust itself. Appellant also argues it gave appellee confidential information concerning the most efficient means and methods to mine the reserves, and the proper equipment to use. This information was reportedly gained through a walk through of the property, on which appellee was accompanied by Mike Waldo, an employee of appellant. During his deposition, Waldo testified that there are really no secrets in a sand and gravel pit. Waldo deposition, 33. He testified that everything is there for an observer to look at, and nothing was hidden. Id. Therefore, any information obtained by appellee from observation of the mining operation is not a trade secret. Further, appellee presented evidence that he received information concerning the proper equipment to use for mining directly from the manufacturer of such equipment. Appellant claims that the knowledge that use of a dredge would be more efficient than use of a drag line to mine the property is a trade secret. However, Straub testified that everyone in the area "functionally literate with sand and gravel" mines with the dredge instead of the drag lines. Straub deposition, 69-70. Appellant next claims that the information concerning the way to obtain ingress and egress to the reserves on the property was a trade secret. Again, this is a matter subject to visual observation, and is therefore not entitled to trade secret protection. Appellee was provided this information by the Trust, as well as by appellant. Appellant claims he indicated to appellee the identity of appellants' customers. The record does not demonstrate that this information was of any economic value to appellee from its disclosure. It is undisputed that appellees' primary purpose in pursuing the purchase of the mining operations and leasing the reserves from the Trust was to supply a company he owned with a source of sand and gravel. Appellant claims that he provided appellee with information concerning the "right people to mine the reserves." The record does not demonstrate that appellee was provided with a specific list of people to mine the reserves. Finally, appellant claims that he provided appellee with information as to how to deal with the bank regarding royalties and a prospective lease. The proposed lease terms provided to appellee do not meet the statutory definition of a trade secret, as they were substantially the same terms included in the publicly recorded lease between appellant and the Spring Trust. In addition, the record does not establish that this information was of any economic value to appellee, as appellee's subsequent lease with the Trust varied in several ways, including the amount of the royalties. The record does not demonstrate that any information regarding the potential lease with the Spring Trust was a trade secret. The first and second assignment of error is overruled.
 III
Appellant argues that the court erred in dismissing its claim for breach of duty of good faith and fair dealing pursuant to a Civ.R. 12 (B) (6) motion. Appellant argues that this a sale of goods contract, upon which the U.C.C. imposes a duty of good faith and fair dealing. In its complaint, appellant did not plead breach of duty pursuant to the Uniform Commercial Code. Appellants merely claimed that, "plaintiff entered into negotiations with defendants on the express and implied understanding that defendants would deal fairly with plaintiff and negotiate in good faith." Complaint, paragraph 10. The trial court correctly dismissed this claim, as the complaint facially does not demonstrate a fiduciary relationship or contract which would impose such duty upon appellee. The third assignment of error is overruled.
The judgment of the Tuscarawas County Common Pleas Court is affirmed.
Gwin, P.J., Wise, J., and Edwards J., concur